IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 11-22844-JAD |
| DRESSEL ASSOCIATES, INC. | : | Chapter 7 |
| Debtor. | : | |
| | : | |
| JEFFREY J. SIKIRICA, TRUSTEE, | : | |
| Plaintiff, | : | Adversary No. 13-02200-JAD |
| v. | : | |
| MIDTOWN NIKI GROUP, REA MODESTO, LP, and BASHMART, LLC, | : | Doc. # 54 |
| Defendants. | : | |

**MEMORANDUM OPINION**

The matter before the Court is a Motion for Summary Judgment (the "Motion") filed by the defendants, Midtown Niki Group, Rea Modesto, LP, and Bashmart, LLC (the "Defendants"). The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157(a) and 1334. For the reasons set forth below, the Motion is denied.

**I.**

The debtor, Dressel Associates, Inc. (the "Debtor"), filed a petition under Chapter 11 of the United States Bankruptcy Code on May 2, 2011. (See Case No. 11-22844-JAD, Doc. # 1). On January 27, 2012, the Debtor's case was

{00012808}

converted to one under Chapter 7. (See Case No. 11-22844-JAD, Doc. # 155). Jeffrey J. Sikirica (the "Trustee") was appointed as successor trustee for the Debtor's estate on June 6, 2012. (See Case No. 11-22844-JAD, Doc. # 215).

The Trustee initiated this adversary proceeding on May 1, 2013 by filing a complaint (the "Complaint") against the Defendants seeking to avoid a transfer under 11 U.S.C. § 548. Through its Complaint, the Trustee alleges that a transfer of $412,579.00 (the "Transfer") was made by the Debtor to Midtown Niki Group, who subsequently transferred portions of the funds to secondary transferees REA Modesto, LP and Bashmart, LLC. The Trustee avers that such Transfer was made "for payment of rent at premises leased to Dressel Associates, LLC" and not for an obligation of the Debtor, and thus argues that the Transfer is avoidable under section 548 because the Debtor received no consideration the Transfer, and the Transfer was made while the Debtor was insolvent. (Case No. 13-02200-JAD, Doc. # 1, pp. 2-3).

On April 9, 2014, the Defendants filed the Motion for Summary Judgment before the Court, averring that the Transfer utilized funds which were the property of Dressel Associates, LLC, an entity separate and apart from the Debtor, although both entities are controlled by the same Mr. Gary L. Reinert, Sr. ("Mr. Reinert"). (See Doc. # 54, p. 4). Attached to the Motion is a Declaration of Frederick S. McMillan ("Mr. McMillan"), the former accountant and book keeper of Dressel Associates, LLC and the Debtor. (See Doc. # 54, Attachment 4). Therein, Mr. McMillan asserts that the Transfer at issue was of

funds deposited by Mr. Reinert on July 15, 2010 in the amount of $924,728.70 (the "Deposit"). (See id.). Mr. McMillan further declares that such funds were deposited for purpose of paying Dressel Associates, LLC's obligations, that the funds were deposited in the Debtor's bank account because Dressel Associates, LLC did not yet have a bank account, and that he did not consider the funds to be property of the Debtor. (See id.). Thus, the Defendants argue that summary judgment is appropriate here as the Trustee cannot succeed under section 548 because the Deposit and the Transfer were not property of the Debtor.

The Trustee filed a Response to the Motion (the "Response") on May 13, 2014 alleging that the funds are indeed property of the debtor. No longer asserting that the Transfer was used to pay Dressel Associates, LLC's rental obligations, the Trustee argues in its Response that the Deposit was made on behalf of an existing obligation owed to the Debtor by Mr. Reinert. (See Doc. ## 55, 56).

A hearing on the matter was held on May 20, 2014. (See Doc. # 58). The matter is now ripe for decision.

## II.

Pursuant to Fed. R. Civ. P. 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056, summary judgment is mandated when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

-3-

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "On summary judgment the inferences to be drawn from the underlying facts contained in (the moving party's) materials must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, (1962)).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The standard for granting summary judgment under Rule 56 "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is "material" for purposes of Rule 56(c) if, under the applicable substantive law, it is "outcome determinative." Id. at 247-48.  An issue is "genuine" for such purposes if, based on the evidence presented, a reasonable jury could find in favor of the non-moving party on that issue. Id.

Thus, to be successful on its Motion for Summary Judgment, the Defendants must persuade this Court that there is no genuine issue as to any

material fact, and that the Defendants are entitled to judgment as a matter of law.  For the reasons set forth more fully below, the Court finds summary judgment inappropriate as a genuine issue of material fact has been presented to this Court and the Defendants are not entitled to judgment as a matter of law.  The Motion is denied.

### III.

Under 11 U.S.C. § 548, a bankruptcy trustee has the power to avoid any transfer of an interest of the debtor in property that was made within two years before the date of the filing of the petition, "if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer . . . ; and was insolvent on the date that such transfer was made . . ."  11 U.S.C. § 548.  This section of the Bankruptcy Code "does not apply to transfers of property in which the debtor has no interest," as the purpose of this statute "is to prevent a debtor from diminishing, to the detriment of some or all creditors, funds that are generally available for distribution to creditors."  Official Comm. of Unsecured Creditors of Phar-Mor, Inc. v. PNC Venture Corp. (In re Phar-Mor, Inc. Sec. Litig.), 185 B.R. 497, 502 (W.D. Pa. 1995), aff'd sub nom. Coopers & Lybrand v. Shapira, 101 F.3d 689 (3d Cir. 1996).  The question currently before the Court is whether the funds at issue were property of the Debtor, or whether they were property of Dressel Associates, LLC.  In order for the Trustee to avoid the transfer under section 548, the funds must be property of the Debtor.

-5-

{00012808}

The Trustee bears the burden of establishing all of the required elements which render a transfer fraudulent under the Bankruptcy Code, including that the property transferred was property of the debtor.  See Beard v. DeVito (In re DeVito), 111 B.R. 529, 531 (Bankr. W.D. Pa. 1990) (citing 4 COLLIER ON BANKRUPTCY, 548-10 at p. 548-122 (5th ed. 1989)).  However, money in a debtor's bank account is presumptively property of the debtor.  See In re Bullion Reserve of N. Am., 836 F.2d 1214, 1217 (9th Cir. 1988), cert. denied, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).  The Defendants attempt to overcome this presumption by asserting that the Debtor had no interest in the funds because such funds were deposited into the Debtor's account by Mr. Reinert "for the purpose of paying Dressel Associates, LLC's obligations" and not those of the Debtor, while noting that a portion of the funds were transferred to Defendant Midtown Niki Group just one day thereafter.  (Doc. # 54, p. 8).

Citing to Nordberg v. Sanchez (In re Chase & Sandborn Corp.), 813 F.2d 1177 (11th Cir. 1987), the Defendants argue that the Debtor clearly did not control the funds as evidenced by the fact that the funds were in the Debtor's account only for a day, and because both the Debtor and Dressel Associates, LLC "considered the funds to be Dressel Associate[s], LLC."  (Id. at p. 9).  In re Chase & Sandborn Corp. held that "a payment to a creditor generally is avoidable as a preference unless the defendants demonstrate that the other party 'controlled the application of the funds' by providing the monies 'only on

{00012808}

condition that a particular creditor receive the proceeds.'" 813 F.2d at 1181 (citing Larose v. Bourg, 45 B.R. 693, 697 (Bankr. M.D. La. 1985)). However, "any funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and any transfers that diminish that property are subject to avoidance." In re Chase & Sandborn Corp., 813 F.2d at 1181.

In support of their contention that Dressel Associates, LLC was in fact in control of the funds, and that the Debtor and Dressel Associates, LLC both considered the funds to be the property of Dressel Associates, LLC and not of the Debtor, the Defendants cite to the Declaration of Mr. McMillen. (See Doc. # 54, Attachment 4). Therein, McMillen states that "Dressel Associates, LLC was formed by Mr. Reinert sometime in the middle of 2010 . . . in an effort to reorganize the Damon's Restaurant chain," and that "[b]efore Dressel Associates, LLC opened its bank accounts, Mr. Reinert and Dressel Associates, LLC used [the Debtor's] bank account as Dressel Associates, LLC's bank account." (Doc. # 54, Attachment 4, ¶¶ 6, 8). McMillen also declares that Mr. Reinert deposited $924,728.70 into the Debtor's bank account on July 15, 2010, in order "to pay Dressel Associates, LLC obligations because Dressel Associates, LLC did not have a bank account." (Id. at ¶ 9). McMillen avers that he did not consider the funds to belong to the Debtor, that Mr. Reinert directed him to transfer $412,579.00 to Defendant Midtown Niki Group out of the Debtor's account "[i]mmediately following Mr. Reinert's deposit." (Id. at ¶ 11).

{00012808}

Further, McMiller states that two days after Mr. Reinert's deposit, Mr. Reinert directed McMillen to notify the Trustee's attorney "that Dressel Associates, LLC had paid Midtown Niki $412,579.00," and that "these funds were considered by [both the Debtor and Dressel Associates, LLC] as being Dressel Associates, LLC funds." (Id. at ¶ 12).

However, the Trustee asserts in the Response to the Motion that according to the schedules filed of record in this case, "[a]t the time of the transfer the books and records of [the Debtor] reflected a note receivable from [Mr. Reinert] with a balance of $786,011.78 owing," and that after Mr. Reinert's July 15, 2010 deposit, "the books and records of [the Debtor] provided a credit against the note receivable in the amount of $924,728.70, leaving a negative balance in the amount of $138,716.92." (Doc. # 55, ¶ 11; see id. at Exhibit 1; see also Doc. # 56, p. 2). Thus, argues the Trustee, the deposit is property of the Debtor, because the deposit was "utilized to reduce an obligation of [Mr. Reinert] to [the Debtor]." (Id. at ¶ 12). The Trustee also notes that "[n]o written agreement exists which would establish that the $924,728.70 transferred to [the Debtor's bank account] were to be held in trust, or otherwise restricted [the Debtor's] use of the $924,728.70." (Doc. # 55, ¶ 20).

The Trustee has presented this Court with a disputed material fact. The Defendants argue that Dressel Associates, LLC controlled the funds which Mr. Reinert deposited in the Debtor's bank account only to pay Dressel Associates, LLC's rental obligations, but the Trustee asserts that such funds were actually

deposited by Mr. Reinert on account of an existing obligation from Mr. Reinert to the Debtor. Whether Mr. Reinert deposited the funds in the Debtor's bank account in order to reduce a previously existing obligation to the Debtor is "outcome determinative" for purposes of determining whether the funds are property of the Debtor's bankruptcy estate. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48. Summary judgment is appropriate if no material factual issue exists and the only issue before the court is a legal issue. Premium Motor Cars, Inc. v. Theisen (In re Premium Motor Cars, Inc.), 404 B.R. 128, 130 (Bankr. W.D. Pa. 2009). Therefore, because the Trustee has raised a material issue of fact, summary judgment is inappropriate at this time.

## IV.

In conclusion, the Motion is denied. Because questions of fact exist as to whether the funds at issue were property of the Debtor, summary judgment is not appropriate. An appropriate order will be entered consistent with this Memorandum Opinion.

**Date:** June 12, 2014            /s/ Jeffery A. Deller
                                **JEFFERY A. DELLER**
                                Chief United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
   Jeffrey J. Sikirica, Esq.
   Michael Kaminski, Esq.
   Ronald B. Roteman, Esq.

{00012808}