IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 11-22844-JAD |
| DRESSEL ASSOCIATES, INC. | : | Chapter 7 |
| Debtor. | : | |
| _____X | : | |
| JEFFREY J. SIKIRICA, TRUSTEE, | : | |
| Plaintiff, | : | Adversary No. 13-02200-JAD |
| v. | : | |
| MIDTOWN NIKI GROUP, REA MODESTO, LP, and BASHMART, LLC, | : | Doc. # 1 |
| Defendants. | : | |
| _____X | | |

**MEMORANDUM OPINION**

The matter before the Court is a complaint (the "Complaint") filed by the plaintiff, Jeffrey J. Sikirica, Trustee (the "Trustee"), seeking avoidance of a transfer under 11 U.S.C. § 548(a)(1)(B) and 12 Pa.C.S. § 5105. The matter is a core proceeding pursuant to 28 U.S.C. § 157 and the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157(a) and 1334. Because the Trustee has failed to meet his burden of proof, the Complaint is dismissed.

I.

The debtor, Dressel Associates, Inc. (the "Debtor"), filed a petition under Chapter 11 of the United States Bankruptcy Code on May 2, 2011. (See Case No. 11-22844-JAD, Doc. # 1). On January 27, 2012, the Debtor's case was converted to one under Chapter 7. (See Case No. 11-22844-JAD, Doc. # 155).

{00013882}

The Trustee was appointed as successor trustee for the Debtor's estate on June 6, 2012. (See Case No. 11-22844-JAD, Doc. # 215). The Trustee initiated this adversary proceeding on May 1, 2013 by filing the instant Complaint against Midtown Niki Group, Rea Modesto, LP, and Bashmart, LLC (together, the "Defendants") seeking to avoid an alleged transfer (the "Transfer") of $412,579.00 made on July 16, 2010 by the Debtor to Midtown Niki Group, who subsequently transferred portions of the funds to secondary transferees REA Modesto, LP and Bashmart, LLC. The Trustee avers that such Transfer was made "for payment of rent at premises leased to Dressel Associates, LLC," and not for an obligation of the Debtor itself, and thus argues that the Transfer is avoidable because the Debtor received no consideration the Transfer, and the Transfer was made while the Debtor was insolvent. (Case No. 13-02200-JAD, Doc. # 1, pp. 2-3).

The Defendants filed a motion for summary judgment (the "Motion for Summary Judgment") on April 9, 2014, averring that the Transfer utilized funds which were the property of Dressel Associates, LLC, an entity separate and apart from the Debtor, although both entities are controlled by the same Mr. Gary L. Reinert, Sr. ("Mr. Reinert"). (See Doc. # 54, p. 4). Attached to the Motion for Summary Judgment was a Declaration of Frederick S. McMillan ("Mr. McMillan"), the son-in-law of Mr. Reinert and former accountant and book keeper of Dressel Associates, LLC and the Debtor. In the Declaration, Mr. McMillan asserts that the Transfer was comprised of funds deposited by Mr.

-2-

Reinert on July 15, 2010 in the amount of $924,728.70 (the "Deposit"), that such funds were deposited for purposes of paying Dressel Associates, LLC's rental obligations and not the obligations of the Debtor, and that the funds were deposited in the Debtor's bank account because Dressel Associates, LLC did not yet have its own bank account. (See Doc. # 54, Attachment 4). The Trustee filed a response on May 13, 2014 alleging that the funds are indeed property of the debtor, and averring that the Deposit was made on behalf of an existing obligation owed to the Debtor by Mr. Reinert, and not for Dressel Associates, LLC's rental obligations. (See Doc. ## 55, 56). This Court denied the Motion for Summary Judgment by Memorandum Opinion dated June 12, 2014, finding that the Trustee had raised a material issue of fact. (See Doc. # 59).

The parties filed a joint pre-trial statement on July 15, 2014, wherein both parties agreed to entry of a final order by this Court. (See Doc. # 65); see In re River Entertainment, 467 B.R. 808 (Bankr. W. D. Pa. 2012). Both parties filed pre-trial briefs on August 18, 2014, and a trial was held on August 25, 2014. (See Doc. ## 68, 69, 70). Post-trial briefs were filed on September 4, 2014, and the Defendants filed a reply on September 11, 2014. (See Doc. ## 74, 75, 76). The matter is ripe for decision.

## II.

Through his Complaint, the Trustee seeks to avoid the alleged Transfer pursuant to 11 U.S.C. § 548(a)(1)(B) and § 5105 of the Pennsylvania Uniform

Fraudulent Transfer Act.[1] To prevail on a claim brought under § 548(a)(1)(B), the Trustee must prove that on the date of the transfer the debtor was either: (1) insolvent or became insolvent as a result of the transfer; (2) was engaged in business or was about to engage in business or a transaction for which the debtor had an unreasonably small capital; or (3) intended to incur or believed the debtor would incur debts that would be beyond the debtor's ability to pay as such debts matured. 11 U.S.C. §§ 548(a)(1)(B). Similarly, to prevail under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), the Trustee must show that the debtor made the transfer without receiving a reasonably equivalent value in exchange and was insolvent at that time or became insolvent as a result of the transfer. 12 Pa.C.S. § 5105. Thus, as an initial matter, the Trustee must prove by a preponderance of the evidence that the Debtor made the Transfer when the Debtor was insolvent, or was rendered insolvent by the Transfer. See In re Zambrano Corp., 478 B.R. 670, 690 (Bankr. W.D. Pa. 2012).

The Defendants argue that the Trustee has failed to support a claim of insolvency to successfully prevail on his Complaint. This Court agrees.

The Trustee argues in his Complaint that at the time that the Transfer was made, the Debtor "was insolvent because, inter alia, it was jointly and

---

[1] While the Trustee's Complaint initially alleged causes of action under 28 U.S.C. § 548(a)(1)(A) and 12 Pa. C.S. § 5104, which require the Trustee to prove the Debtor made the transfer with actual intent to hinder, delay, or defraud creditors, the Trustee has not alleged any facts supporting an intentional fraudulent transfer, and only alleges constructive fraudulent transfer claims under 28 U.S.C. § 548(a)(1)(B) and 12 Pa. C.S. § 5105 in its subsequent pleadings and representations to the Court.

severally liable to Fifth Third Bank in the approximate amount of $20,000,000.00" and "[a]t no time did the Debtor have assets having a value of the amount owed Fifth Third Bank." (Doc. # 1, ¶¶ 14, 15). The Trustee also alleged that the Transfer "left the Debtor with unreasonably small capital" and that at the time the Transfer was made, "the Debtor intended to incur, or believed that it would incur debts that would be beyond the Debtor's ability to pay as such debts matured." (Id. at ¶¶ 16, 17).

Throughout the proceedings, the Trustee has maintained that he has based his allegation of the Debtor's insolvency as of the date of the Transfer on the schedules filed by the predecessor trustee. (See Doc. # 35, p. 3; Doc. # 72). The Trustee avers that "[a]ccording to the Schedules, the value of [the Debtor's] assets was $9,225,620.32," and "[t]otal liabilities were $31,125,603.29." (Doc. # 69, p. 2). The Debtor filed for bankruptcy protection on May 2, 2011, and filed schedules of its assets and liabilities on May 12, 2012; the Trustee avers that there was "no substantial change in the financial condition of [the Debtor]" between the date of the Transfer, July 16, 2010, and the date the Debtor filed for bankruptcy protection. (Id.).

However, as the Defendants point out, the schedules are unverified, as the predecessor trustee refused to sign them under penalty of perjury. (See Doc. # 72, p. 12:10-16). Further, the predecessor trustee admitted at trial that after the schedules were filed, the Court ordered Mr. Reinert to file verified schedules under penalty of perjury, which Mr. Reinert never did. (See id. at p.

15:10-13). The predecessor trustee also admitted at trial that Mr. Reinert had alerted him that there were "numerous . . . mistakes in the schedules," but was unable to specifically identify the mistakes due to "missing records." (See id. at p. 10:2-20). Additionally, counsel for the Defendants highlighted at the trial that the unverified schedules upon which the Trustee relies for his allegation of insolvency "don't address fair value of assets" as of the date of the Transfer, "don't address contingent liabilities," and don't address the valuation of Mr. Reinert's other companies which were jointly and severally liable on a claim of the Debtor's largest secured creditor, valued at over $20 million in the Debtor's schedules and resulting from a judgment against Mr. Reinert, the Debtor, and five other co-debtors. (Doc. # 72, p. 69:1-11; see also Case No. 11-22844-JAD, Doc. # 64, p. 11).

Not only did the Defendant call into question the reliability of the schedules on which the Trustee based his insolvency claim, but the Defendants also note that despite ample opportunity to do so throughout this adversary proceeding, the Trustee did not provide any evidence of the Debtor's business operations, the Debtor's intent or belief to incur or to pay debts from the date of the Transfer going forward, of or the Debtor's working capital or ability to generate profits as of the date of the Transfer. (See Doc. # 74, p. 3; see generally Doc. # 72). The Defendants also highlight that the Trustee presented no expert testimony at the trial held on August 25, 2014 regarding the fair market valuation of the Debtor's assets and liabilities to support his claim of

insolvency as of the date of the Transfer, and provided no expert testimony on the valuation of the Debtor's co-debtors who were jointly and severally liable on the Debtor's largest secured claim. (See Doc. # 68, p. 5; Doc. # 72, pp. 24:9-27:12, 28:4-30:18, 68:19).

The bankruptcy code defines "insolvency" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(31)(A). This test is frequently described as the "balance sheet test," under which a debtor's "assets and liabilities are tallied at fair valuation to determine whether the corporation's debts exceeded its assets." Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 648 (3d Cir. 1991). For purposes of § 548, "solvency is measured at the time the debtor transferred value, not at some later or earlier time." In re R.M.L., Inc., 92 F.3d 139, 154 (3d Cir. 1996) (citations removed); see also 12 Pa. C.S. § 5105 (requiring proof the debtor "was insolvent at [the] time" of the transfer).

Here, the Trustee has only alleged insolvency based upon unverified schedules (which are hearsey), and has not supported such a claim with any verifiable evidence. The Trustee entered no evidence and presented no expert testimony as to the fair market valuation of the Debtor's assets and liabilities as of the date of the Transfer. In the absence of any verifiable evidence as to the value of the Debtor's assets and liabilities as of the date of the Transfer, one cannot determine on this record whether the Debtor was insolvent as of the date of Transfer, or whether the Transfer rendered the Debtor insolvent.

{00013882}

See, e.g., Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 649 (3d Cir. 1991). As such, the Trustee cannot succeed on a claim under 11 U.S.C. § 548(a)(1)(B) or 12 Pa.C.S. § 5105.

Because this Court finds that the Trustee has failed to prove a necessary element to state a claim pursuant to 11 U.S.C. § 548(a)(1)(B) and 12 Pa.C.S. § 5105 (i.e., insolvency or unreasonably small capital, etc.), the Court need not address the other issues raised in these proceedings, including whether the funds transferred were property of the Debtor.

*[Remainder of Page Intentionally Left Blank]*

### III.

In conclusion, the Debtor may very well have been insolvent or rendered insolvent when the Transfers at issue were made. However, the Court can only decide this adversary proceeding based on the evidence presented at trial---which was virtually non-existent. Because the Trustee has failed to prove by a preponderance of the evidence that the Debtor made the Transfer when the Debtor was insolvent, or was rendered insolvent by the Transfer, or had insufficient capital, the Trustee's Complaint must be dismissed. An appropriate order will be issued.

Date: 11-19-2014

JEFFERY A. DELLER
Chief United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Jeffrey J. Sikirica, Esq.
Michael Kaminski, Esq.
Ronald B. Roteman, Esq.

FILED
11/19/14 10:20 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

{00013882}